UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIDGE INFORMATION SYSTEMS, ) ) Appellant, ) ) vs. ) ) GULFCOAST WORKSTATION CORP., ) et al., ) ) Appellees. ) | Cause No. 4:04CV1342 HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on appeal from the United States Bankruptcy Court, which found that Appellees are entitled to a secured claim against Appellant's estate under 11 U.S.C. § 506(a) as a result of Appellees right to a setoff pursuant to §553(a). The Court is vested with jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court has correctly found that Appellees are entitled to a setoff under § 553. Furthermore, the Court's findings are not clearly erroneous. This Court will, therefore, affirm the ruling of the Bankruptcy Court.

### Facts and Background

Appellants, Bridge Information Systems ("Bridge"), and Appellee, Gulfcoast Workstation Corp. ("Gulfcoast"), a subsidiary of Relational Funding, entered into a contract in 1999, whereby Bridge agreed to purchase computer equipment from Gulfcoast. After the parties executed the 1999 agreement, Laurie Donitz, Bridge's resales manager for Sun Microsystems computer equipment approached William

Allison, the Gulfcoast sales representative responsible for the Bridge account, about the possibility of Gulfcoast purchasing Sun computer equipment from Bridge. Gulfcoast agreed to purchase the Sun equipment from Bridge, because Bridge was one of Gulfcoast's largest customers, and Gulfcoast hoped this would ensure more business with Bridge.

Gulfcoast listed itself as the buyer of the Sun equipment on the purchase orders it submitted to Bridge, however, the resale agreement between Sun and Bridge (the "Sun Agreement") prohibited Bridge from selling the Sun equipment to resellers such as Gulfcoast. The Sun Agreement did, however, allow Bridge to sell the Sun equipment to Gulfcoast's parent company, Relational Funding ("Relational"), since Relational's primary business was leasing computer equipment and not reselling it. To circumvent this restriction, Laurie Donitz approached William Allison with the suggestion that Relational be listed as the purchaser of the Sun equipment on the purchase orders and that Bridge list Relational as the purchaser on the invoices.

Laurie Donitz testified in her deposition that Allison told her Gulfcoast had no objection to listing Relational as the purchaser of the Sun equipment. She also testified that Allison never represented to her that Relational consented to being responsible for Gulfcoast's purchases of the equipment from Bridge. Dontitz subsequently testified that Allison represented to her that Relational would, in fact, be obligated to Bridge for the purchase of the Sun equipment but then conceded that she never spoke to anyone

2

at Relational with respect to it being liable for Gulfcoast's purchase on the Sun equipment.

Donitz also testified that she knew Jim Spengler, Gulfcoast's purchasing manager who prepared and sent all invoices to Bridge, but that she believed him to be a Relational employee. The record reveals that although Spengler never explicitly told Donitz that he was a Gulfcoast employee, the two frequently e-mailed one another and that Spengler's e-mail address contained the letters "GCW", indicating Gulfcast Workstation Group. In addition, Spengler testified that the office phones were answered "Gulfcoast" whenever Donitz called.

Paul Frankel, Bridge's Vice-President of resale operations, testified he told Laurie Donitz that Relational had to be responsible for Gulfcoast's purchase of the Sun equipment but said that he had no knowledge regarding whether anyone ever contacted Relational about the issue. Frankel also testified that he may have had a conversation with William Allison and Paul Hoffman at Gulfcoast about it, but he could not recall the substance of either conversation.

William Allison testified that Donitz told him the only reason Relational needed to be listed as the purchaser was to circumvent the Sun Agreement restrictions. Allison testified at trial that he never represented to Donitz that Relational would be responsible for Gulfcoast's purchase of the Sun equipment.

Jim Spengler submitted the purchase orders to Bridge, even though Relational was the entity listed as the purchaser on the purchase orders. Although Relational was

3

listed as the purchaser on the invoices sent by Bridge, Gulfcoast was the entity that remitted payment on the invoices. Both Jim Spengler and Bradley Whitsett, Gulfcoast's General Manager and Vice-President, testified that Gulfcoast received all of the Sun equipment from Bridge. Spengler, however, indicated that there may have been occasions on which Bridge delivered the Sun equipment directly to Gulfcoast's customers.

On February 15, 2001, Bridge filed its petition for relief under Chapter 11 of the United States Bankruptcy Code. At that time, Bridge owed Gulfcoast $1,052,574.88 under the 1999 Agreement, and Gulfcoast owed Bridge $713,677.00 for the Sun equipment. Gulfcoast filed a motion for relief from the automatic stay under § 362(d) so it could assert its right to a setoff of the pre-petition mutual obligations as provided under § 553(a). Bridge argued that there was no mutuality between Gulfcoast and Bridge as required by § 553(a), because Relational was the responsible party for the purchase of the Sun equipment. As such, Bridge claimed Gulfcoast had no right to setoff the $713,677.00 against the $1,052,574.88 that Bridge owed Gulfcoast. The Bankruptcy Court allowed Gulfcoast to convert its application for a secured claim into an adversary proceeding. Gulfcoast then filed a two count adversary complaint against Bridge, requesting a determination of the validity and extent of Gulfcoast's secured claim under § 506(a) against Bridge's estate, and a declaration that Relational is not liable to Bridge for Gulfcoast's purchase of the Sun equipment.

Bridge filed an Amended Counterclaim against Gulfcoast,[1] claiming unjust enrichment (Count I), fraud (Count II), and negligent misrepresentation (Count III). Bridge also asserted at trial that Gulfcoast was not entitled to the equitable remedy of a setoff under the equitable defense of unclean hands, because Gulfcoast complied with Bridge's request to circumvent the Sun Agreement restrictions by listing Relational as the purchaser of the equipment.

The Bankruptcy Court found that Relational never agreed to be obligated for Gulfcoast's purchase of the Sun equipment. The Court also found the testimony of Gulfcoast's witnesses to be more credible than the testimony of witnesses from Bridge. The Court entered judgment in favor of Gulfcoast on both its adversary complaint and Bridge's Amended Counterclaim, because it found that Gulfcoast never represented to Bridge that Relational would be liable for the Sun equipment, and that Laurie Donitz knew or should have known that Bridge was dealing solely with Gulfcoast with respect to the purchase. Bridge now appeals the Bankruptcy Court's ruling, arguing that the court misapplied the law with respect to the mutual debt requirement for a setoff under 11 U.S.C. § 553. Bridge also argues that the Court erred in granting judgment in favor of Gulfcoast on the claims asserted in Bridge's Amended Counterclaim.

## Standard of Review

When a district court reviews a bankruptcy court's judgment, it acts as an appellate court. *Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir. 1987). As with

---

[1] Bridge's original Counterclaim contained an action for breach of contract against Relational (Count I) and an unjust enrichment claim against Gulfcoast (Count II).

5

most appellate proceedings, the court may review the bankruptcy court's legal conclusions *de novo*, but the bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. *Id.* (*citing* Bankr. R. 8013). Bankruptcy Rule 8013, which sets forth the standard of review to be applied by district courts with respect to bankruptcy appeals, reads:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This Court will review Judge McDonald's conclusions of law *de novo* but must accept his findings of fact unless they are found to be clearly erroneous.

## Discussion

**Mutuality of Debt**

Appellant Bridge first argues that the Bankruptcy Court erred in finding there was mutuality of debt as required under § 553(a) to establish Gulfcoast's right to a setoff. Section 553(a) provides in relevant part:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

Section 506(a) provides that the amount of debt a creditor may setoff under § 553(a) is a secured claim against the debtor's estate. Section 553(a) requires that the two debts sought to be offset must have arisen pre-petition, and if the applicable state

6

law does not require strict mutuality of debt, the debts represent mutual obligations between the debtor and creditor. *United States v. Gerth,* 991 F.2d 1428, 1431 (8th Cir. 1993). State law governs a creditor's substantive right to setoff, because Section 553(a) does not establish an independent federal right to setoff. *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18 (1995).

Under Missouri law, a defendant has the right to setoff the amount it owes the plaintiff against the amount that the plaintiff owes it. *Buchweiser v. Laberer,* 695 S.W.2d 125, 129 (Mo. banc 1985). The term "mutual debt" requires that the debts be in the same right and between the same parties, standing in the same capacity. *Burns v. Plaza West Associates,* 967 S.W.2d 540, 552 (Mo. Ct. App. 1998).

It is undisputed that Bridge owes Gulfcoast $1,052,574.88 under the 1999 Agreement. It is also undisputed that the two debts in question arose pre-petition. Bridge argues, however, that the Bankruptcy Court erroneously believed that Bridge asserted that mutuality was lacking because Relational, not Gulfcoast, owed Bridge the $713,667.00 for the Sun equipment. Bridge claims this was not its position at trial, nor is it its position on appeal. Bridge now contends that the requirement of mutuality had not been shown because the parties did not enter the transactions in the same capacity. Specifically, Bridge argues that the debts arose from different capacities because Bridge's debt arose out of a two-party transaction (Bridge buying products from Gulfcoast on Bridge's creditworthiness) and Gulfcoast's debt arose out of a three-party transaction (Gulfcoast buying products from Bridge on Relational's creditworthiness). Thus, Bridge contends the failure of the Bankruptcy Court to consider the parties' varying capacities was an error in the application of law. This argument is without

merit, as it appears Bridge is attempting to create an issue of law where there is none.

The evidence at trial established that the Sun equipment purchase agreement was between Bridge and Gulfcoast. In addition, there was no evidence that anyone at Bridge ever contacted anyone at Relational regarding the purchase, and it was Gulfcoast, not Relational, which received the Sun equipment from Bridge. Bridge's belated attempt to inject a third party to the transaction when there was none cannot overcome the intent of Gulfcoast and Bridge with respect to the Sun equipment purchase agreement. The record is clear that the purpose for which the parties listed Relational on the purchase orders and invoices was to circumvent the Sun Agreement restrictions. This in no way acts to establish different capacities with respect to mutual debt. The debts sought to be offset are quite simply mutual obligations between Bridge and Gulfcoast, thus, the two parties stood in the same capacity with respect to the two debts in question. Gulfcoast is therefore entitled to setoff the $713,677.00 owed to Bridge under § 553(a).

**Bridge's Amended Counterclaim**

Bridge also brings this appeal claiming the Bankruptcy Court made erroneous factual findings with respect to Bridge's Amended Counterclaim. As stated, Bridge's Amended Counterclaim contained charges of unjust enrichment (Count I), fraud (Count II), and negligent misrepresentation (Count III) against Gulfcoast. Bridge claims the record was sufficient for finding "fraud (or at least negligent misrepresentation) by Gulfcoast, and the Bankruptcy Court's findings on those issues were clear error." This Court disagrees.

The record is clear it was Bridge's intention to sell the Sun computer equipment to Gulfcoast and it was Gulfcoast's intention to purchase the equipment. In fact, Gulfcoast initially listed itself as the buyer of the Sun equipment on the purchase orders it submitted to Bridge. As it was revealed, however, the resale agreement between Sun and Bridge prohibited Bridge from selling the Sun equipment to resellers such as Gulfcoast. It was Laurie Donitz (of Bridge) who approached William Allison (of Gulfcoast) with the suggestion that Relational be listed on purchase orders and invoices in order to circumvent the Sun Agreement restriction. Gulfcoast agreed to Bridge's request, and Allison never represented to Donitz that Relational consented to being responsible for Gulfcoast's purchases of the equipment from Bridge.

Bridge had an obligation under the Sun Agreement not to sell Sun equipment to resellers such as Gulfcoast, and Bridge recruited Gulfcoast to assist it in circumventing the Sun Agreement restrictions. Yet Bridge now claims Gulfcoast committed fraud (or at least negligent misrepresentation) for such assistance. The Bankruptcy Court was in a position at trial to weigh the credibility of the witnesses, and it determined the testimony of Gulfcoast's witnesses to be more credible than the testimony of witnesses from Bridge. The Court found that the *credible* evidence adduced at trial did not support Bridge's contention that Gulfcoast made representations to Bridge that Relational would be responsible for Gulfcoast's purchase of the Sun equipment. This Court finds that the Bankruptcy Court's determinations with regard to those issues are not clearly erroneous.[2]

## Conclusion

---

[2] Bridge does not appeal the Bankruptcy Court's findings with regard to Bridge's claim for unjust enrichment.

For the reasons set forth above, the judgment of the Bankruptcy Court will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the Bankruptcy Court's judgment in favor of Appellees is affirmed.

Dated this 22nd day of August, 2005.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE